## Walter's Appeal.

1. The provisions of the Act of March 13th 1815, § 5, limiting dissolution of incestuous marriages to the life of the party, are not confined to divorces but apply to all courts and proceedings.

2. These provisions are not repealed by the 39th section of Act of March 31st 1860 (Crimes), which declares such marriages void.

3. Walter married the widow of his son, and died, leaving her to survive him. *Held*, in the distribution of his estate, that the validity of the marriage could not be questioned.

4. Repeals by implication are not favored.

January 19th 1872. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. WILLIAMS, J., at Nisi Prius.

Appeal from the decree of the Orphans' Court of *Chester county*: No. 178, to January Term 1872.

The questions in this case arose in the distribution of the estate of William Walter, deceased, remaining in the hands of Israel H. Walter and Wilmer W. Walter, his executors.

The decedent's will and codicils were proved August 13th 1870, and on the 16th of September, Susannah Walter his widow, by an instrument under seal, agreed to accept under the will. On the 2d of August 1871, she elected to take under the intestate laws and $300 under the exemption laws, and declined to accept the provisions of the will.

The widow, Susannah Walter, had been the wife of William Walter, Jr., a son of the testator; the son having died she married his father, the testator, August 16th 1866.

The executors settled their account showing in their hands a balance of $10,882.58.

The account was confirmed June 13th 1871, and Washington Townsend, Esq., appointed auditor to make distribution.

Before him the widow claimed her share of the estate under the intestate laws, and also $300 under the exemption laws.

Her claim was resisted by the children of the testator on the ground that her marriage was incestuous and therefore void.

They resisted her claim also on the ground of her having accepted under the will. The auditor, who heard much evidence, decided that she was not bound under the circumstances by her acceptance under the will.

He also decided, "that as the marriage between William Walter and Susannah Walter was not dissolved in the lifetime of the parties, it cannot be inquired into now, and that Susannah Walter is the lawful widow of William Walter, Sr." He therefore awarded to her the amount claimed by her out of the testator's estate.

After exceptions to the report of the auditor, it was confirmed by the Orphans' Court, Butler, P. J.

Israel H. Walter, a son, and one of the executors, appealed to

the Supreme Court, and assigned the decree of confirmation for error.

The Act of 1705 "Against Incest," 1 Smith's Laws 26, declares marriages within the degrees of consanguinity mentioned in the act—a son's wife being one—"to be void to all intents and purposes, and it shall be lawful for the governor to grant a divorce from the bonds of matrimony."

The Act of March 13th 1815, § 5, 6 Smith L. 286, 1 Br. Purd. 508, pl. 2, provides : "All marriages within the degrees of consanguinity or affinity, according to the table established by law, are hereby declared void to all intents and purposes, and it shall and may be lawful for the Courts of Common Pleas of this Commonwealth, or any of them, to grant divorces from the bonds of matrimony in such cases; and the parties shall be subject to the like penalties as are contained in the act against incest; but when any of the said marriages shall not have been dissolved during the lifetime of the parties, the unlawfulness of the same shall not be inquired into after the death of either the husband or wife."

By the Act of March 31st 1860, § 39, Pamph. L. 392, 1 Br. Purd. 326, pl. 39 : "If any person shall commit incestuous fornication or adultery, or intermarry within the degrees of consanguinity or affinity, according to the following table (established by law), he or she shall, on conviction, be sentenced to pay a fine not exceeding five hundred dollars, and undergo an imprisonment by separate and solitary confinement at labor, not exceeding three years; and all such marriages are hereby declared void."

*C. H. Pennypacker*, for appellant.—The Act of 1860 declares such marriages void *ab initio*: Johnston's Estate, 9 Casey 515; Parker's Appeal, 8 Wright 312. A contract prohibited by a statute is void: Chitty on Contract 694; Shelford on Marriage and Divorce 138. He referred also to Act of 1815.

*W. Darlington*, for appellee.

The opinion of the court was delivered, January 29th 1872, by Sharswood, J.—At common law there were two kinds of disabilities affecting the validity of the marriage relation. The first were termed canonical, depending on the law of the church and enforced in the ecclesiastical court. Among these were consanguinity and affinity. These causes rendered marriage voidable only, and it was necessary that the nullity should be declared during the lifetime of the parties, otherwise they were and continued valid for all civil purposes. The second kind were civil disabilities, such as a prior marriage, infancy, idiocy, lunacy, fraud or force. These made the contract void, *ab initio*, and the union meretricious. In such cases no sentence of nullity or

decree of divorce was required, but at all *times*, whether during the lifetime of the parties or afterwards, the marriage might be considered and treated as null and void: 5 Co. 98 b; Elliott *v.* Gurr, 2 Phillimore 16; 1 Bl. Com. 434, 435; 2 Kent's Com. 95. In this state there are no merely canonical disabilities; for the canons of no church are of any binding force, nor are there any ecclesiastical courts to pass sentence upon offenders *pro salute animarum.* Consanguinity and affinity within the prohibited degrees are civil disabilities by force of express statute, and make the marriage null and void without decree of divorce, except as otherwise provided. That this is so whenever a marriage is declared null and void by the express provision of some statute, is abundantly clear from the text writers and cases. Thus a failure to comply with the provisions of the English Marriage Acts was always held to avoid the marriage *in toto* and *ab initio.* Want of consent of parents or guardians; want of celebration in some church or chapel, or by a priest in orders, are enumerated by Sir William Blackstone among civil disabilities. A remarkable case, *instar omnium*, is Haydon *v.* Gould, 1 Salk. 119, decided in the Court of Delegates, where a marriage by the minister of a dissenting congregation of Sabbatarians was held to be no marriage at all, and after the death of the woman the man claiming on this ground to be her husband was not allowed administration on her estate.

By the Act of 1705, entitled "An act against incest" (1 Smith 26), all marriages thereafter made within the degrees of consanguinity or affinity, according to the table therein contained, were declared to be void to all intents and purposes, and it was made lawful for the governor, for the time being, to grant divorce from the bonds of matrimony. This power of the governor was either repealed or fell with the adoption of the Constitution of 1796. The Act of September 19th 1785 (2 Smith 343), which conferred jurisdiction on the Supreme Court to decree divorce, did not embrace the case of incestuous marriages. It would seem then that no power existed in any court to grant divorces for such cause, until by the Act of March 13th 1815, Pamph. L. 150, it' was conferred on the courts of common pleas. The 4th section of that act provided "that all marriages within the degrees of consanguinity or affinity, according to the table established by law, are hereby declared void to all intents and purposes," and after investing the Courts of Common Pleas with jurisdiction to decree divorces in such cases, it declares, "but when any of the said marriages shall not have been dissolved during the lifetime of the parties, the lawfulness of the same shall not be inquired into after the death of either the husband or wife." It will be observed that this provision is not a mere limitation upon the power or jurisdiction of the Common Pleas to grant divorce, but

[Walter's Appeal.]

the language is so broad, and that with evident purpose, as to include all courts and proceedings whatever, declaring that the validity of such marriages shall not be inquired into anywhere or any how after the death of either of the parties. It is contended, however, that this provision of the Act of 1815 is repealed by the 39th section of the Act of March 31st 1860, Pamph. L. 393, which, after enacting that " if any person shall commit incestuous fornication or adultery, or intermarry within the degrees of consanguinity or affinity, according to the table established by law, he or she shall on conviction be sentenced to pay a fine not exceeding $500, and to undergo an imprisonment by separate or solitary confinement at labor, not exceeding three years," adds, " and all such marriages are hereby declared void." It is to be observed that the Act of 1815 is not mentioned in the enumeration of acts supposed to be repealed in part or in whole, in the 79th section of the Penal Procedure Act of the same date as the Penal Code, Pamph. L. 451, which is certainly some presumption against the alleged repeal. It must be admitted that the implication is very slight, and implied repeals are never favored. This language of the Act of 1860 is in fact not quite so emphatic as that of 1815. In the former, incestuous marriages are simply declared void; in the latter, void to all intents and purposes. As part of the Penal Code, the Act of 1860 supplies and repeals the Act of 1705, and leaves the Act of 1815 unaffected. Accordingly the Act of 1705 is classed in the 79th section among the repealed statutes. The Act of 1815 did not make such marriages voidable by a decree of separation, but they were declared to be absolutely void, and could be inquired into anywhere and in any proceeding, but not after the death of either of the parties. The Act of 1860 is simply a declaration of the same law.

There is no other question which it is necessary to consider. We agree with the auditor and learned court below upon the facts, that the widow was not bound by her agreement of September 16th 1870.

　　　　　　Decree affirmed and appeal dismissed at the costs of the appellant.